**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


TRACI GUYNUP                          :          CIVIL ACTION

    V.

                               :          NO. 2:06-cv-04315-MMB

LANCASTER COUNTY, ET AL.        :

**DEFENDANTS, LANCASTER COUNTY, ET AL'S**
**PROPOSED JURY INSTRUCTIONS**

    Defendants, Lancaster County, et al., by and through their counsel Christine E.

Munion, Esquire and David P. Karamessinis, Esquire submit the following Proposed Jury

Instructions.

**PROPOSED JURY INSTRUCTION # 1**

**ALL PERSONS EQUAL BEFORE THE LAW**

    This case should be considered and decided by you as an action between persons

of equal standing in the community, of equal worth, and holding the same or similar

stations in life.

## PROPOSED JURY INSTRUCTION # 2

## SECTION 1983 INTRODUCTORY INSTRUCTION

Traci Guynup is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color of state law.

Third Circuit Model Jury Instructions, 4.1.

<u>**PROPOSED JURY INSTRUCTION # 3**</u>

<u>**ELEMENTS OF A SECTION 1983 CLAIM**</u>

Traci Guynup must prove both of the following elements by a preponderance of the evidence:

First:   Defendants acted under color of state law.

Second: While acting under color of state law, one or more defendants deprived Traci Guynup of a federal constitutional right.

I will now give you more details on action under color of state law, after which I will tell you the elements Traci Guynup must prove to establish the violation of her federal constitutional rights.


Third Circuit Model Jury Instructions, 4.3.

## PROPOSED JURY INSTRUCTION # 4

## UNDER COLOR OF STATE LAW

The first element of the plaintiff's claim is that the defendants acted under color of state law.  This means that Traci Guynup must show that the defendants were using power they possessed by virtue of state law.

A person can act under color of state law even if the act violates state law.  The question is whether the person was clothed with the authority of the state, by which I mean using or misusing the authority of the state.

By "state law" I mean any statute, ordinance, regulation, custom or usage, of any state (or territory or the District of Columbia).  And when I use the term "state," I am including any political subdivisions of the state, such as a county or municipality, and also any state, county or municipal agencies.

Because all defendants were acting as corrections officers, I instruct you that they were acting under color of state law.  In other words, this element of Traci Guynup's claim is not in dispute, and you must find that this element has been established.


Third Circuit Model Jury Instructions, 4.4.

Third Circuit Model Jury Instructions, 4.4.1.

## PROPOSED JURY INSTRUCTION # 5

## DEPRIVATION OF A FEDERAL RIGHT

I have already instructed you on the first element of Traci Guynup's claim, which requires her to prove that the defendants acted under color of state law.

The second element of Traci Guynup's claim is that the defendants deprived her of a federal constitutional right.

Traci Guynup claims that defendants violated her rights under the Eighth and Fourteenth Amendments to the United States Constitution, and that they did so in five different ways.

First, Traci Guynup claims that defendant Steberger used excessive force on her when she was confined in disciplinary segregation.  Second, Traci Guynup claims that defendants subjected her to cruel and unusual punishment by virtue of certain conditions of confinement at the jail.  Third, Ms. Guynup claims that certain individual defendants denied her appropriate mental health treatment.  Fourth, plaintiff claims that certain defendants retaliated against her because she registered complaints.  Fifth plaintiff claims that supervisors violated her constitutional rights by acquiescing in subordinate corrections officers violations of her constitutional rights.

I will now explain to you the law you should apply concerning these different claims which arise under the Eighth and Fourteenth Amendments of the United States Constitution.

Third Circuit Model Jury Instructions, 4.5.

Third Circuit Model Jury Instructions, 4.3

## PROPOSED JURY INSTRUCTION #6

## PERSONAL INVOLVEMENT

Plaintiff has brought individual claims under the civil rights law against Carrie McWilliams, Tammy Moyer, Jodi Barone and Cheryl Steberger.  To impose liability on the individual defendants, plaintiff must show that each one individually participated in the alleged constitutional violation.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## PROPOSED JURY INSTRUCTION #7

### Section 1983 – Excessive Force – Convicted Prisoner

The Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment, protects convicted prisoners from malicious and sadistic uses of physical force by prison officials.

In this case, plaintiff claims that Sergeant Cheryl Steberger committed a sadistic use of force when she used an electronic body immobilizing device on her.

In order to establish her claim for violation of the Eighth Amendment, plaintiff must prove that defendant, Sergeant Cheryl Steberger used force against her maliciously, for the purpose of causing harm, rather than in a good faith effort to maintain or restore discipline.  It is not enough to show that, in hindsight, the amount of force seems unreasonable; the plaintiff must show that the defendant used force maliciously, for the purpose of causing harm.  When I use the word "maliciously," I mean intentionally injuring another, without just cause or reason, and doing so with excessive cruelty or a delight in cruelty.  Ms. Guynup must also prove that Sergeant Steberger's use of force caused some physical injury to her.

In deciding whether Traci Guynup has proven this claim, you should consider whether defendant used force against Traci Guynup, whether there was a need for the application of force, and the relationship between that need for force, if any, and the amount of force applied.  In considering whether there was a need for force, you should consider all the relevant facts and circumstances that Ms. Steberger reasonably believed to be true at the time of the encounter.  Such circumstances can include whether defendant reasonably perceived a threat to the safety of staff or inmates, and if so, the

extent of that threat.  In addition, you should consider whether defendant made any

efforts to temper the severity of the force she used.

You should also consider whether plaintiff was physically injured and the extent

of such injury.  But a use of force can violate the Eighth Amendment even if it does not

cause significant injury.  Although the extent of any injuries to plaintiff may help you

assess whether a use of force was legitimate, a malicious and sadistic use of force violates

the Eighth Amendment even if it produces no significant physical injury.

<u>Content of the Eighth Amendment standard for excessive force.</u>  "The infliction

of pain in the course of a prison security measure ... does not amount to cruel and unusual

punishment simply because it may appear in retrospect that the degree of force authorized

or applied for security purposes was unreasonable." *Whitley*, 475 U.S. at 319.  Rather,

"whenever prison officials stand accused of using excessive physical force in violation of

the Cruel and Unusual Punishments Clause," the issue is "whether force was applied in a

good faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Only a use of force which shocks the conscience violates the Eighth Amendment.

*Fuentes v. Wagner,* 206 F. 3d 335, 348-49 (3d Cir. 2000).

The Court has stressed that prison officials' decisions are entitled to deference;

although this deference "does not insulate from review actions taken in bad faith and for

no legitimate purpose, . . . it requires that neither judge nor jury freely substitute their

judgment for that of officials who have made a considered choice."

*Whitley*, 475 U.S. at 322.

**PROPOSED JURY INSTRUCTION #8**

**Conditions of Confinement – Convicted Prisoner –
Denial of Adequate Medical Care**

Because inmates must rely on prison authorities to treat their serious medical

needs, the government has an obligation to provide necessary medical care to them.  In

this case, plaintiff claims that defendants violated the Eighth Amendment to the United

States Constitution by showing deliberate indifference to a serious medical need on

plaintiff's part.  Specifically, plaintiff claims that defendants were deliberately indifferent

to Ms. Guynup's serious psychological problems.

In order to establish her claim for violation of the Eighth Amendment, plaintiff

must prove each of the following three things against each defendant by a preponderance

of the evidence:

First:  Plaintiff had a serious medical need.

Second:  Each defendant was deliberately indifferent to that serious medical need.

Third:  Defendant's deliberate indifference caused harm and physical injury to
plaintiff.

I will now proceed to give you more details on the first and second of these three

requirements.

First, plaintiff must show that she had a serious medical need.  A medical need is

serious, for example, when:

• A doctor has decided that the condition needs treatment; or

• The problem is so obvious that non-doctors would easily recognize the need for
medical attention; or

Second, plaintiff must show that defendant was deliberately indifferent to that serious medical need.  Plaintiff must show that each defendant knew of an excessive risk to plaintiff's mental health, and that each defendant disregarded that risk by failing to take reasonable measures to address it.

Plaintiff must show that each defendant actually knew of the risk.  If plaintiff proves that there was a risk of serious harm to her and that the risk was obvious, you are entitled to infer from the obviousness of the risk that specific defendants involved with her mental health care knew of the risk.  However, defendants claim that even if there was an obvious risk, they were unaware of that risk.  If you find that defendants were unaware of the risk, then you must find that they were not deliberately indifferent.

There are a number of ways in which a plaintiff can show that a particular defendant was deliberately indifferent, including the following.  Deliberate indifference occurs when:

• A prison official denies a reasonable request for medical treatment, and the official knows that the denial exposes the inmate to a substantial risk of pain or permanent injury;

• A prison official knows that an inmate needs medical treatment, and intentionally refuses to provide that treatment;

• A prison official knows that an inmate needs medical treatment, and delays the medical treatment for non-medical reasons;

• A prison official knows that an inmate needs medical treatment, and refuses to provide that treatment unless the inmate is willing and able to pay for it;

• A prison official refuses to let an inmate see a doctor capable of evaluating the need for treatment of an inmate's serious medical need;

• A prison official persists in a particular course of treatment even though the official knows that the treatment is causing pain and creating a risk of permanent injury.

In this case, plaintiff was being treated for mental health problems.  Thus, to show a particular defendant, a non-medical official, was deliberately indifferent, plaintiff must show that the specific defendants knew that there was reason to believe that the medical staff were mistreating or not treating plaintiff.

Mere errors in medical judgment do not show deliberate indifference.  Thus, plaintiff cannot prove that Lancaster County non-medical staff were deliberately indifferent merely by showing that the doctor chose a course of treatment different from what plaintiff requested.  Mere disagreements with the course of medical treatment do not support a constitutional claim. [1]

*Monmouth County Corr. Inst. v. Lanzaro,* 834 F. 3d 326 (3d Cir. 1987).

Third Circuit Model Jury Instructions 4.11.1

---

[1] The Third Circuit has indicated that the standard for pretrial detainees is identical to that for convicted prisoners.  *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs.").

## PROPOSED JURY INSTRUCTION #9

Plaintiff has complained about various conditions of confinement during her incarceration at the Lancaster County Jail.  I will now tell you the standards that apply to claims that she has made that happened during those periods.

(A)     During Ms. Guynup's first Period of incarceration – December 2005 to September, 2006, she was a convicted prisoner.

The Eighth Amendment applies to convicted inmates.

In order to prove an Eighth Amendment claim, a prisoner must show that a condition, either alone or in combination with other conditions, deprived her of "the minimal civilized measure of life's necessities."  *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

Regarding conditions of confinement, an inmate must establish two elements: objective proof of seriously inadequate conditions of confinement and subjective proof of defendants' culpable state of mind.  *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

For the first element, conditions of confinement may only constitute cruel and unusual punishment if they result "in unquestioned and serious deprivations of basic human needs…[which] deprive inmates of the minimal measures of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

"No static 'test' can exist by which Courts can determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from evolving standards of decency that mark the progress of a maturing society." *Id.* at 346.

The Eighth Amendment does not mandate comfortable prison conditions; prisons that house inmates convicted of serious crimes cannot be free of discomfort. *Peterkin v. Jeffes,* 855 F. 2d 1021, 1027 (3d Cir. 1988).  As the Supreme Court has stated, "extreme deprivations are required to make out a conditions-of-confinement claim…[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian,* 503 U.S. 1, 112 S. Ct. 995 (1992).

An Eighth Amendment violation occurs only where cell conditions are so inadequate as to be intolerable, shockingly substandard or dangerous. *Inmates of Allegany County Jail v. Pierce,* 612 F. 3d 754, 757 (3d Cir. 1979).

For the second element of a condition of confinement claim, plaintiff must prove that defendants had a culpable state of mind; plaintiff must show that defendants were deliberately indifferent to her health and safety.  *See Farmer,* 511 U.S. 825, 114 S. Ct. 1970, 1977 (1994).  The standard is subjective; the defendants must have been aware of the facts from which the inference could have been drawn that a substantial risk of serious harm existed, and the defendants must have made the inference. *Id.* at 1979.

(B)     <u>During Ms. Guynup's second period of incarceration, September, 2006 to December 2006, she was awaiting trial, and thus not yet convicted</u>.

The Fourteenth Amendment applies to her complaints about certain prison conditions during this four month period.

You must consider whether the conditions she complained about constitute punishment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979)(cited in *Hubbard v. Taylor,* 538 F. 3d 229, 231-232 (3d Cir. 2008).

You must decide whether the disability [or condition] is imposed for the purpose of punishment, or whether it is but an incident of some other.

Finally, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Farmer,* 511 U.S. at 845.  Thus, a prison official may be held liable under the Eighth Amendment for denying human conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Id.*

Legitimate governmental purpose, absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on 'whether [the disability has] an alternative purpose…and whether it appears excessive in relation to [that] purpose.'…Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'

Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.  *Hubbard,* 538 F. 3d at 232 (citing *Bell,* 441 U.S. 538-539).  You must also be mindful that:

In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, you must heed the Court's warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials exaggerated

their response to these considerations, you should ordinarily defer to their expert

judgment in such matters.

*Bell,* 441 U.S. at 540, n. 23.

**PROPOSED JURY INSTRUCTION #10**

**Section 1983 –  Liability in Connection with the Actions of Another –
Supervisory Officials**

Plaintiff contends that Supervisors Billy, Bodner and Siemasko's subordinates,
violated plaintiff's federal rights, and that they should be liable for the subordinate's
conduct.  If you find that Carrie McWilliams, Tammy Moyer, Sergeant Steberger, or
Officer Barone violated plaintiff's federal rights, then you must consider whether these
supervisors caused their conduct.

Supervisors are not liable for such a violation simply by their status.  To show that
a supervisor caused or was responsible for a subordinate's conduct, plaintiff must show
one of three things:

First:  Either Billy, Bodner or Siemasko directed their subordinates to take the
action in question;

Second:  One of the supervisors, Billy, Bodner or Siemasko had actual knowledge
of a subordinate's violation of plaintiff's rights and that supervisor acquiesced in
that violation; or

Third:  One of the supervisors, Billy, Bodner or Siemasko was deliberately
indifferent to the consequences, established and maintained a policy, practice or
custom which directly caused the violation.

As I mentioned, the first way for plaintiff to show that a supervisor is liable for a
subordinate's conduct is to show that a supervisor directed subordinate to engage in the
conduct. Plaintiff need not show that a supervisor directly, with his/her own hands,
deprived plaintiff of her rights. The law recognizes that a supervisor can act through
others, setting in motion a series of acts by subordinates that the supervisor knows, or
reasonably should know, would cause the subordinates to violate the plaintiff's rights.

Thus, plaintiff can show that a supervisor caused the conduct if plaintiff shows that a subordinate violated plaintiff's rights at supervisor's direction.

Alternatively, the second way for plaintiff to show that a supervisor is liable for a subordinate's conduct is to show that supervisor had actual knowledge of a subordinate's violation of plaintiff's rights and that a supervisor acquiesced in that violation.  To "acquiesce" in a violation means to give assent to the violation.  Acquiescence does not require a statement of assent, out loud:  acquiescence can occur through silent acceptance.  If you find that a supervisor had authority over a subordinate and that a supervisor actually knew that a subordinate was violating plaintiff's rights but failed to stop a subordinate from doing so, you may infer that a supervisor acquiesced in a subordinate's conduct.

Third Circuit Model Jury Instructions, 4.6.1.

## PROPOSED JURY INSTRUCTION #11

## RETALIATION

To prevail on plaintiff's claim that prison officials retaliated against her, she must show that:

1.      She was engaged in constitutionally protected conduct;

2.      She suffered some adverse action by an individual defendant; and

3.      That the exercise of her constitutional right was a substantial mediating factor behind the adverse action by an individual defendant.

Prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penologiocal interest.

*Rauser v. Horn,* 241 F. 3d 330-334 (3d Cir. 2001).

## PROPOSED JURY INSTRUCTION # 12

## NO CLAIM FOR EMOTIONAL DAMAGE WITHOUT PHYSICAL INJURY

Ms. Guynup has brought several Federal claims seeking compensation for emotional damages.  Under the Federal statute, applicable to prisoners, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The law requires a showing of "more-than-deminimis physical injury as a predicate to allegations of emotional injury."  *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).


*See Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000).

**PROPOSED JURY INSTRUCTION #13**

**Americans With Disabilities Act - General**

Plaintiff has brought a claim under Title II of the Americans with Disabilities Act.

Title II states that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity."  42 U.S.C. 12132 (2000 E.D.).

I instruct you that the Lancaster County Jail is a public entity.

**PROPOSED JURY INSTRUCTION #14**

**AMERICAN'S WITH DISABILITIES ACT—STANDARDS**

Plaintiff has alleged that she was denied certain services while an inmate at

Lancaster County Jail.  Plaintiff must establish that:

(1) She is a qualified individual with a disability;

(2) That she is otherwise qualified for the program sought or would be qualified if

the Jail made reasonable modifications to the program; and

(3) That Ms. Guynup was excluded from the program solely by reason of her

disability.


*Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1009 (3d Cir. 1995)

42 U.S.C. 12132.

<u>**PROPOSED JURY INSTRUCTION #15**</u>

<u>**ADA Definitions — Disability**</u>

Under the ADA, the term "disability" means a [physical/mental] impairment that "substantially limits" a "major life activity." I will now define some of these terms in more detail. Again, I remind you to consider the specific definitions I give you, and not to use your own opinions as to what these terms mean.

**Mental Impairment**

The term "mental impairment" means any condition that prevents the mind from functioning normally. In this case you have heard evidence that Ms. Guynup suffered from bi-polar disorder and other such psychological problems. I instruct you that if you found sufficient evidence that she in fact suffered from these problems, then you will find that she suffered a "mental impairment" and thus a disability.

**Major Life Activities**

Under the ADA, the term "disability" includes a mental impairment that substantially limits a major life activity. Major life activities are activities that are of central importance to everyday life. I instruct you that thinking is a major life activity within the meaning of the ADA.

**Substantially Limiting**

Under the ADA, an impairment "substantially limits" a person's ability to think if it prevents or restricts him from thinking on a day to day basis compared to the average person in the general population.

For an impairment to "substantially limit" a major life activity, it must "significantly restrict" the plaintiff as compared to the general population.   *Albertson's Inc., v. Kirkingburg,* 527 U.S. 555, 565 (1999),

To decide if plaintiff's [alleged] impairment substantially limits plaintiff's ability to continually think, you should consider the nature of the impairment and how severe it is, how long it is expected to last, and its expected long-term impact. You must also consider whether plaintiff can or does use any corrective measure such as medication. If plaintiff's use of medication allows her to think generally, as well as a member of the general population, then plaintiff does not have a "disability" within the meaning of the ADA.

Only impairments with a permanent or long-term impact are disabilities under the ADA. Temporary injuries and short-term impairments are not disabilities. Even so, some disabilities are permanent, but only appear from time to time. For example, if a person has a mental or physical disease that usually is not a problem, but flares up from time to time, that can be a disability if it substantially limits a major life activity.

The name of the impairment or condition is not determinative. What matters is the specific effect of an impairment or condition on the life of plaintiff.

*"Substantially Limits"*

This requires you to evaluate whether the impairment prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term.   It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment

in terms of their own experience is substantial.

Third Circuit Model Jury Instruction 9.2.1.

*Toyota Motor Mfg v. Williams,* 534 U.S. 184, 198 (2002); *Albertson's, Inc.* v.

*Kirkingburg,* 527 U.S. 555, 567 (1999).

**PROPOSED JURY INSTRUCTION #16**

**ADA DEFINITION -  SERVICES, PROGRAMS OR ACTIVITIES**

The ADA applies to a prison's services, programs and activities. *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998).

It is for you to decide whether Ms. Guynup was a qualified individual with a disability which substantially limited a major life activity and who was denied access to prison services, programs or activities by the prison solely by reason of her mental disability.

## PROPOSED JURY INSTRUCTION #17

## STATE LAW CLAIM – ASSAULT

An assault is an act done with the intent to put another in reasonable and immediate fear of a harmful or offensive contact with his body and that does, in fact, cause such fear.

To commit an assault, it is not necessary that the person actually intend to inflict a harmful or offensive contact with the body of another. It is enough that the person intend to cause only a fear of such contact.

In order for the defendant to be held responsible for the commission of an assault against the plaintiff, you must find:

(1)     that the defendant intended to put the plaintiff in reasonable and immediate fear of a harmful or offensive contact with his body; and

(2)     that the plaintiff, as a result of the defendant's act, was put in reasonable and immediate fear of such contact.

Corrections officers are justified or permitted to use force to perform their job and in committing what would otherwise be an assault, provided that the force used is reasonable.

Pa. SSJI (Civ.), 13.01.

**PROPOSED JURY INSTRUCTION #18**

**STATE LAW CLAIM – BATTERY**

A battery is an act done with the intent to cause a harmful or offensive contact with the body of another [or an act done with the intent to put another in reasonable and immediate fear of a harmful or offensive contact with his body] and that directly [or indirectly] results in the harmful or offensive contact with the body of another.

In order for the defendant to be held responsible for committing a battery against the plaintiff, you must find:

(1)     That the defendant intended to cause a harmful or offensive contact with the body of the plaintiff or that the defendant intended to put the plaintiff in reasonable and immediate fear of a harmful or offensive contact with his body, and

(2)     That the defendant's act directly or indirectly resulted in a harmful or offensive contact with the plaintiff's body.

A body contact is offensive if it would offend a reasonable person's personal sense of dignity.

Corrections officers are justified or permitted to use force to perform their job and in committing what would otherwise be an assault, provided that the force used is reasonable.


Pa. SSJI (Civ.) 13.02.

**PROPOSED JURY INSTRUCTION # 19**

**COMPENSATORY DAMAGES**

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not any defendant should be held liable.

If you find a defendant liable, then you must consider the issue of compensatory damages.  You must award Traci Guynup an amount that will fairly compensate her for any injury he actually sustained as a result of the defendants' conduct.

Ms. Guynup must show that the injury would not have occurred without defendants' acts or omissions.  Ms. Guynup must also show that the defendants' acts or omissions played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of defendants' acts or omissions.

Compensatory damages must not be based on speculation or sympathy.  They must be based on the evidence presented at trial, and only on that evidence.  Plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

Ms. Guynup claims the following items of damages:

• Physical harm to Ms. Guynup during and after the events at issue, including ill health, physical pain, disability, or discomfort, and any such physical harm that Ms. Guynup is reasonably certain to experience in the future.  In assessing such harm, you should consider the nature and extent of the injury and whether the injury is temporary or permanent.

• Emotional and mental harm to Ms. Guynup during and after the events at issue, including fear, humiliation, and mental anguish, and any such emotional and mental harm that Ms. Guynup is reasonably certain to experience in the future.

• Ms. Guynup is entitled to be fairly and adequately compensated for past, present, and future loss of her ability to enjoy any of the pleasures.


Pa. SSJI (Civ.) 6.0.11.


                                        **WILLIAM J. FERREN & ASSOCIATES**
                                        BY:    /s/ David P. Karamessinis, Esquire
                                               DAVID P. KARAMESSINIS
                                               Attorney for Defendants
                                               ID#:  50836
                                               1500 Market Street – Suite 2920
                                               Philadelphia, PA  19102
                                               267-675-3028

**IN THE UNITES STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

TRACI GUYNUP                          :        CIVIL ACTION
         V.                           :        NO. 2:06-cv-04315-MMB
LANCASTER COUNTY, ET AL.              :

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that service of a true and correct copy of the enclosed Proposed Jury

Instructions was sent to all parties on **<u>November 25, 2008</u>**, by United States first-class mail,

postage pre-paid.

Jamie Ray, Esquire
LAW OFFICE OF STEPHEN S. PENNINGTON
1617 JFK Boulevard, Suite 800
Philadelphia, PA  19103
**ATTORNEY FOR PLAINTIFF**

**WILLIAM J. FERREN & ASSOCIATES**

BY:    <u>Christine E. Munion, Esquire</u>
       /s/ Christine E. Munion, Esquire
       Attorney for Defendants
       Attorney ID#:  72724
       10 Sentry Parkway, Suite 301
       Blue Bell, PA  19422
       (215) 274-1731
       CMUNION@travelers.com